U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

**JUL 25 2005**

**CLERK, U.S. DISTRICT COURT**
By _____
        Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| STEPHANIA R. BROCKMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:04-CV-298-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Stephania R. Brockman seeks judicial review of a decision of the Commissioner of Social Security denying her applications for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1382.

The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties this court recommends that the District Court affirm the Commissioner's decision.

## I.      Statement of the Case

Brockman alleged disability because of left arm, left hand, and left shoulder problems. (Tr. 62.) The medical records show that physicians have diagnosed and treated her for conditions related to her left upper side including left carpal tunnel syndrome, left thoracic outlet syndrome, ulnar entrapment at the left elbow, cervical radiculopathy, and a non-displaced fracture of her left hand. (*See, e.g.,* Tr. 102, 106, 132, 149, 159, 168, 174, 184, 186, 199.) Physicians believe that

Brockman's problems with her left upper extremity were caused by overuse syndrome from her past work. (Tr. 159, 232.)

An Administrative Law Judge (ALJ) determined that Brockman was not disabled because she was able to perform light work with no repetitive fingering and with the freedom to change positions from sitting to standing. (Tr. 20.) The Appeals Council denied Brockman's request for review and the ALJ's decision became the Commissioner's final decision. (Tr. 5.)

Brockman contests the Commissioner's decision of non-disability arguing that the ALJ committed a number of legal errors. She contends the ALJ erred in (1) failing to properly determine her Residual Functional Capacity (RFC) and failing to accord proper weight to her treating physician's opinions; (2) failing to present a complete hypothetical to the Vocational Expert (VE); and (3) failing to ask the VE if there were any contradictions between the VE's testimony and the Dictionary of Occupational Title (DOT). For the following reasons Brockman's contentions must be rejected and the Commissioner's decision affirmed.

II.    **Discussion**

A.    _The ALJ's Analysis of Treating Physician's Opinion and RFC Finding_

Brockman contends that the ALJ did not correctly determine her RFC by failing to discuss the factors in 20 C.F.R. §404.1527(d) in assessing opinions provided by primary treating physician, Charles V.O. Hughes, III, M.D., and failing to accord controlling weight to those opinions. Contrary to Brockman's contentions, the ALJ did not err in failing to properly determine her RFC and did not err in declining to give controlling weight to Dr. Hughes' opinions.

Under the holding in _Newton v. Apfel,_ 209 F.3d 448, 456 (5th Cir. 2000), conflicts in the evidence, including conflicts between medical opinions, are resolved by the Commissioner rather

2

than the courts. The ALJ may decrease the weight assigned to a treating physician's opinion for good cause, and good cause is established when a physician's opinion is unsupported by the evidence. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It is ultimately the ALJ who has the sole responsibility for determining a claimant's disability status and he is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

Notwithstanding the deference accorded the ALJ, he is required to consider each of the factors set forth in 20 C.F.R. §404.1527(d) before declining to give any weight to the opinions of the treating physician. *Newton*, 209 F.3d at 456. This requirement, however, is limited to situations in which there is an "absence of competing first-hand medical evidence." *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing *Newton*, 209 F.3d at 456-58).

In this case, there was competing first-hand medical evidence that contradicted Dr. Hughes' opinions. Nonetheless, the ALJ considered the factors set forth in 20 C.F.R. § 404.1527(d) before declining to accord controlling weight to Dr. Hughes' opinions. Under Section 404.1527(d), an ALJ must consider: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Newton*, 209 F.3d at 448 (citing  20 C.F.R. § 404.1527(d)).

The ALJ considered the first three factors, by acknowledging that Dr. Hughes was Brockman's treating physician, the length and extent of the treating relationship, as well as the frequency of treatment. (Tr. 16.) The ALJ then discussed the conclusions from a residual functional

3

capacity questionnaire Dr. Hughes had completed, including the physician's opinion that Brockman's symptoms of pain would frequently interfere with attention and concentration but that she was capable of high stress work. ( *Id.*)  The ALJ further noted Dr. Hughes' opinion that Brockman was incapable of sitting and standing more than two hours in an eight-hour day, that she could not lift or carry objects in a competitive work situation, that she was significantly limited in her abilities to reach, handle, and finger objects, and that she should be considered for permanent disability. (Tr. 16-17.)

Turning to the final three factors, the ALJ noted that Dr. Hughes' opinions were contradicted by specialists who treated Brockman and reported that she experienced relief from various orthopedic procedures under their care. (Tr. 17.) Finally, he noted that Dr. Hughes is not a specialist in orthopedics or neurology, the areas of medical practice for which he gave his opinions. (*Id.*) Additionally, the ALJ noted that Dr. Hughes' opinion that Brockman should be considered permanently disabled was a legal conclusion rather than a medical opinion and, as such, was not entitled to controlling weight. *(Id.)*

The ALJ's determinations are correct.  Dr. Hughes' opinion that Brockman should be considered permanently disabled is a legal conclusion that the ALJ was not required to adopt. *See Frank*, 326 F.3d at 620.  In addition, the ALJ demonstrated good cause for rejecting Dr. Hughes' medical conclusions because several specialists provided opinions and medical findings that contradict Dr. Hughes' opinions. *See Newton*, 209 F.3d at 456.  For example, after undergoing carpal tunnel release surgery, Patrick Molligan, M.D., an orthopedic specialist, found that Brockman had good resolution of sensory changes and that she had reached maximum medical improvement. (Tr. 103.) Thereafter, Cheryl F. Weber, M.D., a specialist in electrodiagnostic medicine, found that

4

a nerve conduction study showed no evidence of carpal tunnel syndrome or cervical radiculopathy, although there were bilateral ulnar neuropathies at the elbows, worse on the left.  (Tr. 127.) Brockman subsequently underwent left ulnar nerve submuscular transposition.  (Tr. 186.)

To determine the cause of pain in her shoulders, Brockman also underwent an MRI, which revealed degenerative changes and mild to moderate impingement secondary to degenerative changes with minimal joint effusion.  (Tr. 117.)  She also underwent an x-ray which was negative and revealed an "intact left shoulder" although another ex-ray showed moderate degenerative changes in her right shoulder. (Tr. 176-77.)  A scan of her spine showed degenerative changes at the cervical level and some spur formation and mild narrowing but no stenosis or deformity of the spinal cord. (Tr. 183.)

On August 17, 2002, Donald L. Wehmeyer, M.D., performed a physical examination of Brockman finding she had excellent vascularity and good dermal ridges with sensations to light touch in her left upper extremity.  (Tr. 149.)  Brockman was able to extend her fingers and make a fist, opposition in her thumb was intact and strong, and abduction and adduction of her fingers was intact. ( *Id.*)  Brockman had good palpable radial and ulnar nerves at the wrist, she had excellent elbow flexion and extension, and her biceps, triceps, and brachioradialis were intact and strong. (*Id.*) Brockman's fine motor coordination was within normal limits and motor testing revealed 60 pounds of grip strength in her right hand and 30 pounds in her left hand.  (Tr. 140, 148.)  Considering impairments related to her left hand, arm, and shoulder, Dr. Wehmeyer concluded that Brockman had a 13 percent whole person impairment rating and that she was at maximum medical improvement. (Tr. 134; *see* Tr. 141.)

5

The ALJ's determination that Brockman was capable of performing light work with no repetitive fingering and with the freedom to change positions from sitting to standing is supported by substantial evidence. Brockman's allegations of disability were based on her complaints of pain and inability to use her left upper extremity.[1] (Tr. 62.) The ALJ accommodated these limitations by finding that Brockman could not perform work that required repetitive fingering, (Tr. 20), and the evidence demonstrates that Brockman would be capable of such work. She indicated in application documents that her difficulties in her upper extremities were confined to her left hand and admitted that she was capable of lifting and carrying items in her right hand. *Id.* Although she complained of problems with her right hand on the eve of the hearing and Dr. Hughes believed she had right carpal tunnel syndrome which the ALJ acknowledged (Tr. 13, 269), prior to this the record is void of any such evidence and there is no diagnostic evidence in the record to confirm that the impairment was disabling.

In addition, Brockman indicated in application documents that she was not limited in her ability to sit, stand, or walk, and during the period in which she claims she was disabled she admitted that she drove with her right hand and did some housework. (Tr. 85, 172.) The ALJ also found contrary evidence to Brockman's statements concerning her inability to use her hands. (Tr. 313-15.) Brockman claimed an inability to use her hands in picking up babies and typing. (*Id.*) She also testified to chronic pain that felt like, "every time [her] heart beats that [her] nerves are coming through the fingertips." (Tr. 315.) The ALJ noted, however, that she had completed forms

---

[1]

It should be noted that the inability to use one arm and hand is not per se disabling. *See Robinson v. Celebrezze*, 326 F.2d 840, 841 (5th Cir. 1964), *cert. denied*, 379 U.S. 851 (1964) (citations and quotations omitted) ("it is common knowledge that a man with only one arm or leg, if not otherwise incapacitated, may do much valuable work and engage in many gainful occupations"); *Carey v. Apfel*, 230 F.3d 131, 145-47 (5th Cir. 2000).

(Disability Report and Work Report) in her own handwriting. (Tr. 18 *see* Tr. 61-70, 76-85.)

B.  *The ALJ's Hypothetical to the Vocational Expert*

Contrary to Brockman's contentions, the ALJ did not fail to present a complete hypothetical question to the VE; rather, he presented a hypothetical to the VE that included all of the limitations supported by the evidence.

The ALJ solicited testimony from a VE at a hearing and, as is customary, posed a hypothetical question to the VE in which the claimant's physical limitations and demographic information were incorporated and inquired whether such an individual would be capable of performing past jobs. (Tr. 316-18.)  Specifically, the ALJ asked, "Assume the following hypothetical, if you would, please.  An individual, 53 years of age, high school educated, past relevant work as described.  She has a residual functional capacity for light work, not requiring any repetitive use of – repetitive fingering.  Could that person perform any of these past jobs?" (*Id.*)

The VE expert answered the question in the negative; however, he went on to identify two jobs that Brockman could perform and to which her skills would transfer: information clerk and customer complaint clerk. (Tr. 318.)  In response to further questioning the VE listed the identification numbers in the DOT for these jobs as: 237.367-022, and 241.367-014. (Tr. 318.) *See* DICOT 237.367-022, 241.367-014 (Westlaw 2005).  According to the VE these jobs exist in significant numbers in the national economy. (Tr. 318.)  The VE then agreed that people working in the suggested jobs would have the freedom to occasionally change positions at the work site. (Tr. 318.)

Although Brockman argues that the ALJ failed to incorporate limitations found by Dr. Hughes, including limitations in her ability to sit, stand, walk, and report to work on a consistent

7

basis, the ALJ did not find that Brockman had those limitations and the evidence does not support

such limitations. (*See, e.g.,* Tr. 85, 148-49, 224.)

At the fifth step of the sequential disability evaluation process the Commissioner carries the

burden of showing that, considering the claimants age, education, and past work experience, he or

she can perform other work. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (citing 20 C.F.R.

§ 404.1520(f)); *see also Harrell v. Bowen*, 862 F.2d 471, 478 (5th Cir. 1988). The ALJ may rely

upon a VE in resolving the issue as to whether the claimant's work skills can be used in other

occupations and in identifying the specific occupations in which they may be used. 20 C.F.R.

§ 404.1566(e). This was done in this case; therefore, there was no error. *Boyd*, 239 F.3d at 705.

   C.   *The ALJ's Failure to Inquire About Conflict Between VE's Testimony and DOT*

The VE testified that, based on the ALJ's hypothetical question, Brockman was capable of

performing the occupations of information clerk and customer complaint clerk. (Tr. 318.)

Brockman's representative asked the VE whether these occupations would require a worker to lift

any weight and the VE replied that the positions did not require lifting. (Tr. 322.)  Brockman

contends that the VE's testimony in this regard conflicts with information in the DOT, which

indicates that the positions do require occasional exertion of up to 10 pounds of force. DICOT

237.367-022, 241.367-014 (Westlaw 2005). Brockman argues that under Social Security Ruling

00-4p the ALJ was obligated to inquire as to whether a conflict existed between the VE's testimony

and information in the DOT and that his failure to do so requires remand.

Brockman is correct in arguing that Social Security Ruling 00-4p requires an ALJ to inquire

as to whether a conflict may exist between VE testimony and DOT information. S.S.R. 00-4p, 2000

WL 1898704. The Ruling requires that the explanation be made on the record and that the ALJ

8

explain how the conflict was resolved. *Id.* Brockman is likewise correct in pointing out that the ALJ did not inquire as to whether there was a conflict between the VE testimony and DOT information. However, any failure in this regard is not reversible error that would require remand.

As an initial point, the Fifth Circuit Court of Appeals has held that the DOT is not comprehensive and "does not purport to include each and every specific skill or qualification for a particular job" and, therefore, the "value of a vocational expert is that he or she is familiar with the specific requirements of a particular occupation, including working conditions . . . " *Carey,* 230 F.3d at 145. Therefore, in cases in which there is an implied or indirect conflict between VE testimony and information in the DOT, the ALJ may rely on the VE testimony so long as the record reflects an adequate basis for doing so. *Id.* at 146; *cf.* S.S.R. 00-04p at *2.

In this case, even if there was a conflict between the VE's testimony and the DOT, there was an adequate basis for the ALJ to rely on the VE's testimony that Brockman could perform the identified occupations because the ALJ did not determine that Brockman was incapable of occasional lifting; in fact, he determined that she was capable of performing light work with limitations. (Tr. 20.) Under the regulations light work requires lifting. 20 C.F.R. § 404.1567(b). Therefore, the fact that the jobs identified by the VE may require some lifting does not affect the ALJ's ultimate conclusion.

In addition, the question Brockman's representative posed to the VE assumed limitations outside the requirements of light work which the ALJ did not recognize and that were not presented to the VE. (Tr. 321.) It is well settled that an ALJ need not rely on testimony by the VE in response to hypothetical questioning that assumes functional limitations not found by an ALJ and that are not supported by the evidence. *See, e.g., Owens v. Heckler,* 770 F.2d 1276, 1282 (5th Cir. 1985). Thus,

9

any conflict between the VE's testimony regarding limitations not found by the ALJ and the DOT must be considered harmless error.

Error is regarded as "harmless" when it does not compromise the ALJ's ultimate conclusion. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Procedural perfection in administrative proceedings is not required and a court should not vacate a judgment unless the substantial rights of a party have been affected. *See Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988) (per curiam))

As the discussion in this Report and Recommendation demonstrates, the Commissioner's determination that Brockman is not disabled is supported by substantial evidence and reached through proper legal standards and, therefore, the decision is conclusive and must be affirmed. *Martinez*, 64 F.3d at 173 (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).

## III.    **Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Brockman's Complaint with prejudice.

## IV.    **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except on grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the

district court. *Douglass v. United States Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:_____July 25_____, 2005.


NANCY M. KOENIG
United States Magistrate Judge

11